*Judgment reversed and judgment for plaintiffs in error.*

SHERICK, J., and ROBERTS, J., of the Seventh Appellate District, concur.

DUNCAN *v.* LINTON, ADMX., ET AL.

58 

(Decided April 16, 1929.)

*Messrs. Vorys, Sater, Seymour & Pease,* for plaintiff.

*Mr. Henry J. Linton,* for defendant administratrix.

*Mr. J. M. Howard* and *Mr. C. A. Eberly,* for other defendants.

KUNKLE, J. This case comes into this court on appeal by the defendants other than Zula Linton, administratrix, and involves the distribution of certain funds in the hands of the administratrix, which sums were paid to her by the United States government as the present value of monthly installments due under an insurance policy issued to Fred B. Duncan.

Fred B. Duncan was a World War veteran, who died in France in the fall of 1918 as the result of wounds received in battle. The defendants other than the administratrix are half-brothers and half-sisters of Fred B. Duncan.

It appears from the record that Fred B. Duncan's mother and father were divorced shortly after his birth; that both the father and mother remarried shortly after the divorce was secured; that the mother left Columbus, where the family then lived, and moved to Illinois.

Forest L. Duncan, the plaintiff, is the father of

Fred B. Duncan. In January, 1918, Fred B. Duncan applied for, and there was issued to him, a policy of war-risk insurance in the sum of $10,000, in which Minerva Lee Miller, his grandmother, was designated as beneficiary.

It is undisputed that Fred B. Duncan had always lived with his grandmother, and was accustomed to calling her "Mother," and that he was also accustomed to refer to his father, Forest L. Duncan, as "Forest." On January 20, 1918, while in France, Fred B. Duncan sent a letter to Minerva Lee Miller, his grandmother, at Columbus, of which the following is shown to be a copy:

"I made a mistake in my insurance. I didn't give the correct name of the first beneficiary. So in sending the correct one in to Washington, D. C., I sent yours in the place of Forest's name [meaning his father, said plaintiff] so that makes you first and him second. See. When I get a reply I will let you know how that is. So don't you worry as I will look after your part all the way through everything. If there is anything to get I see that you are taken care of."

It appears from the record that, upon the death of Fred B. Duncan, the government paid the monthly installments on this policy to the grandmother, always designated by him as his mother, up to December 7, 1924, when Minerva Lee Miller, the grandmother, died. On November 7, 1925, the government paid to the defendant Zula Linton, administratrix of Fred B. Duncan, the then present value of the unpaid monthly installments, amounting to $7,606.

The defendants, other than the administratrix, claim this fund as the half brothers and sisters of

Fred B. Duncan. Plaintiff, Forest L. Duncan, claims this sum as the second beneficiary intended by Fred B. Duncan, designated in his letter of January 20, 1918, and plaintiff asks that the said administratrix be held to be a trustee of this sum for his benefit.

We have carefully considered the briefs which have been filed by counsel, and the authorities therein contained. We shall not attempt to discuss the evidence in this case, nor the proceedings and rulings of the lower court, as counsel are thoroughly familiar with same.

From a careful consideration of the record, we have reached the conclusion that the evidence establishes the intent on the part of Fred B. Duncan to make his father, Forest L. Duncan, the second beneficiary under his war-risk insurance policy.

We are also of opinion that this court has jurisdiction to declare a trust in the funds paid by the United States government to the administratrix for distribution among those entitled thereto. We think this case falls within the reasoning of the decision of this court in the case of *Walcott* v. *Walcott,* in the Court of Appeals of Clark county.

We think it also falls within the reasoning found in the case of *Claffy* v. *Forbes,* (D. C.), 280 F., 233, 235, the latter part of which decision is as follows:

"All that is necessary is that the real wish and purpose of the soldier, who exposed his life in the army for the safety of the government, should sufficiently appear * * *; nor is it vital that notice of designation should be received by the bureau prior to the death of the insured. * * * Throughout the history of the civilized world, since the decrees of Julius Caesar, the intention and wish of the sol-

dier, with relation to designation of beneficiary or disposition of property, killed in the line of duty, has been carried out when ascertained, whether it was scrawled in the sand with the point of his sword, or written on the scabbard of his sword or his shield; * * * and remedial justice requires, under the facts in this case, that the designation of the niece in the letter to the mother be established from the date of presentation to and record thereof by the Bureau of War Risk Insurance.''

The finding of the court will be in favor of the plaintiff.

*Decree for plaintiff.*

ALLREAD and HORNBECK, JJ., concur.