**EGLESTON v. UNITED STATES et al.**
**No. 696.**

District Court, E. D. Illinois.
April 18, 1947.

nest R. McHale, of E. St. Louis, Ill., and William M. Lytle, of Chicago, Ill., for defendants.

LINDLEY, District Judge.

The mother of a deceased soldier brought this suit to recover $10,000 insurance in two policies issued by the Government, the soldier having been killed in the course of training on March 25, 1943. She made defendants, the United States Government and the soldier's widow. The Government has filed a pleading stating that, inasmuch as it is unable to determine to which of the claimants the money should be paid, it holds the money as stakeholder. The widow has filed a cross-claim to recover the amount due. The issue presented is similar to that arising in cases of interpleader.

The soldier enlisted in April, 1941. He was killed, while in the Pacific Islands, by automobile accident. He named as beneficiary in his insurance policies his mother. He met the girl who became his wife apparently in the year 1942 while he was on furlough. Later she accompanied his parents to visit him in camp in June or July, 1942. Following this the soldier visited his family in August, 1942, and on August 3, 1942, he and the young lady were married. One day later he returned to Camp Forest, and still later his wife visited him for a few days before he sailed for the Pacific in late August, 1942. On August 17, 1942, he wrote from Camp Forest to the parents of his wife, expressing his love and affection for their daughter and saying that he was carrying $10,000 insurance "made out to her." After sailing, on August 27, 1942, he wrote his wife saying that he was providing an allotment for her and adding "and I am sending to you the address so you can have my insurance changed. Make yourself the principal beneficiary and mother the contingent beneficiary. Here it is, honey, Veterans Administration, Washington, D. C. You are going to have to take care of this yourself, darling." Following this, Mrs. Egleston wrote the Veterans Administration a letter, delivered on September 9, 1942, in which she asked to have the beneficiary changed to show her as the principal and the insured's mother, Mrs. Mildred Egleston, as the contingent benefi-

Thomas A. Graham, of Danville, Ill., R. E. Boley, of Olney, Ill., and Benjamin I. Norwood, of Danville, Ill., for plaintiff.

Robert Z. Hickman, of Danville, Ill., Howard L. Brockman, of Olney, Ill., Er-

ciary. The Administration did not consider this in accord with its regulations and said that the change must be in writing. Apparently, Mrs. Egleston did not appreciate the necessity of forwarding to the Veterans Administration her husband's letter of August 27, 1942, explicitly directing the change of beneficiary. Later, some two months before the insured's death, on January 18, 1943, Captain DeCamp, his superior officer wrote, at the soldier's request, to the Director of Insurance that Egleston desired to change the beneficiary in his insurance policies as follows: principal beneficiary, Mrs. Robert Carl Egleston, Olney, Illinois; contingent, Mrs. Bruce Egleston, Olney, Illinois. And on the 13th day of November, 1943, the Captain made an affidavit to the effect that he had written this letter at the request of the deceased who said that he wanted the change of beneficiary completed. To the same effect, is an affidavit of the company clerk. One week before his death, the soldier wrote in endearing terms to his wife, expressing all the love and affection for her that any one could express.

The files of the Veterans Administration disclose that, after wavering from one side to the other, the Veterans Administration, on May 27, 1945, wrote the widow as follows: "Based on the evidence of record a determination has been made to the effect that the insured requested a change in the designation of the beneficiary prior to his death, changing the name of the beneficiary from his mother, Mildred Egleston, to his wife, Florence Egleston." In the War Department's files certified by the Secretary of War, is the letter from the soldier's captain to the effect that the insured wanted his beneficiary changed. Obviously this is a communication from a third person, but it is from the captain of the soldier in the regular transactions of army affairs. In the soldier's last letter to his wife, he commented upon "the fine captain" he had. I think it entirely reasonable to infer from the evidence that the captain was the agent of the insured. However, in this connection, I have not given consideration to the affidavits of the captain and the company clerk or to the captain's letter. Rather than base the validity of my findings upon questionable evidence, I have ignored these documents, for the reason that I believe the evidence, exclusive of them, impels a conclusion that a change of beneficiary was completed within the decisions of many courts.

The National Service Life Insurance Act of 1940, § 602(g), 38 U.S.C.A. § 802(g) provides that: "The insured shall have the right to designate the beneficiary or beneficiaries of the insurance, * * * within the classes herein provided, and shall, * * * at all times have the right to change the beneficiary or beneficiaries of such insurance without the consent of such beneficiary or beneficiaries * * * within the classes hereing provided." The regulation of the Veterans Administration of October 16, 1942, 7 F.R. 8363, promulgated under the Act, fixes the terms upon which a change of beneficiary can be made as follows: "A change of beneficiary to be effective must be made by notice in writing signed by the insured, and forwarded to the Veterans Administration by the insured, or his agent, and must contain sufficient information to identify the insured. Whenever practicable such notices shall be given, on blanks prescribed by the Veterans Administration."

In discussing the approach to proper interpretation of an earlier Act, in Johnson v. White, 8 Cir., 39 F.2d 793, at page 796, the court said: "The intention, desire, and purpose of this soldier should, if it can reasonably be done, be given effect by the courts, and substance, rather than form, should be the basis of the decisions of courts of equity. The clearly expressed intention and purpose of the deceased to have his wife named as the beneficiary in this insurance should control, and should not be thwarted by the fact that all the formalities for making this purpose effective may not have been complied with." Following this thought and carrying it into effect are the following cases: Claffy v. Forbes, D.C., 280 F. 233; Steele v. Suwalski, 7 Cir., 75 F.2d 885, 99 A.L.R. 588; Kaschefsky v. Kaschefsky, 6 Cir., 110 F.2d 836. The same principle was also announced in Bradley v. United States et al., 10 Cir., 143 F.2d 573. From these cases it is clear that it is the duty of the court to

determine first the real intent and purpose of the soldier and then to ascertain whether he has done affirmative acts sufficient to evince his intention and to signify his purpose to carry it into effect. From the above cases, it is clear that a change in beneficiary, if actually within the intention of the soldier and actually evinced by an affirmative act upon his part, of the character required by the statute, is effective even though notice to the Veterans Bureau does not occur until after the insured's death. Rigid formality must give way to common fairness and remedial justice. The important question is, has all doubt been removed as to the intent of the deceased soldier.

 It seems clear to me that the deceased did everything prior to his death necessary to secure a change of beneficiary. His letter of August 27, 1942, is clear and explicit in this respect. There remained only the necessity of his wife forwarding this to the Veterans Administration; instead of doing so, she wrote a letter herself. Obviously the only thing remaining essential to a complete change of beneficiary was the ministerial act of the Government in entering the change upon the records of the Government. I do not believe that in such situation the expressed intention of the deceased soldier should be defeated, inasmuch as he had done everything necessary upon his part to make the change, and the only reason it was not so entered of record was that those to whom he had entrusted the completion of the ministerial work failed to complete the physical execution of his expressed instructions. There is no question here of fraud in obtaining a change; nor is this a suit to set aside a change procured by fraud. The issue is one of fact as to whether what was done by the deceased was sufficient to comply with the law. There is no question about his intention and no question of his explicitly signed request for a change.

■ Bradley v. United States, supra, is relied upon by the mother of the soldier. True, the majority in that opinion believed that there was not sufficient evidence of affirmative action upon the part of the soldier. Judge Phillips, dissenting, disagreed. The question was largely one of fact and both the District Judge and Judge Phillips thought there was sufficient evidence of an affirmative act carrying out the intention of the soldier. Whatever may have been the right factual conclusion there, the court as a whole adhered to the rule that if the evidence of the intention of the insured is clear and if there is substantial evidence of an affirmative act upon his part in execution of his intention, then there has been a change of beneficiary.

The language of the present regulation is not entirely the same as that of former regulations but, to my mind, it is essentially the same and is to be interpreted from the same basic consideration.

I find that the soldier intended to change his beneficiary; that he wrote affirmatively doing so; that he made his wife his agent for the purpose of completion of the change and that the fact that completion of the change did not occur until after his death is immaterial. The foregoing includes all my findings of fact and conclusions of law.

Proper form of judgment in favor of the cross-claimant Stallard may be submitted.